******************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

## ROBERT ESPOSITO *v.* CITY OF STAMFORD ET AL.
## (SC 20928)

Robinson, C. J., and McDonald, D'Auria, Mullins,
Ecker, Alexander and Dannehy, Js.

*Syllabus*

The plaintiff, the decedent's surviving spouse, appealed from the decision of the Compensation Review Board. The board had upheld the administrative law judge's denial of an award of statutory (§ 31-308 (b)) permanent partial disability benefits in connection with injuries that the decedent had sustained while working for the Stamford Police Department. The plaintiff claimed, inter alia, that the board had incorrectly concluded that the decedent's entitlement to permanent partial disability benefits did not vest before his death because, prior to his death, the decedent had reached maximum medical improvement as a matter of law, insofar as the decedent previously had been found to have a permanent incapacity qualifying him for statutory (§ 31-307 (c)) total incapacity benefits. *Held*:

A finding of a permanent injury under § 31-307 (c) does not entitle a workers' compensation claimant to permanency benefits under § 31-308 (b) as a matter of law, in the absence of a permanent partial disability rating or an agreement sufficient for a binding meeting of the minds that would furnish a basis for the requisite finding of maximum medical improvement.

The decedent's entitlement to permanency benefits under § 31-308 (b) did not vest before his death because the record did not establish that he had reached maximum medical improvement during his lifetime, even though he had been found to have a permanent injury under § 31-307 (c).

(*Three justices dissenting in one opinion*)

Argued April 22—officially released August 2, 2024*

*Procedural History*

Appeal from the decision of the administrative law judge for the Seventh District of the Workers' Compensation Commission, where Roseann Esposito was added as a plaintiff, denying the claim for permanent partial disability benefits, brought to the Compensation Review Board, which affirmed the decision of the administrative law judge, and the plaintiff Roseann Esposito appealed. *Affirmed.*

* August 2, 2024, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

*Steven G. Howe*, for the appellant (plaintiff Roseann Esposito).

*Scott W. Williams*, for the appellees (defendants).

*Opinion*

ROBINSON, C. J. In this appeal, we consider whether a finding of a "permanent" injury entitling a workers' compensation claimant to total incapacity benefits under General Statutes § 31-307 (c) means that the claimant has reached maximum medical improvement as a matter of law, thus also entitling the claimant to permanent partial disability benefits (permanency benefits) under General Statutes § 31-308 (b). The plaintiff Roseann Esposito, who is the surviving spouse of the decedent and original plaintiff, Robert Esposito,[1] appeals[2] from the decision of the Compensation Review Board (board) affirming the decision of the administrative law judge for the Seventh District of the Workers' Compensation Commission (commission),[3] who denied an award of permanency benefits. The board based its affirmance on its determination that the decedent had not reached maximum medical improvement during his

---

[1] The decedent was the original plaintiff in this matter before the Workers' Compensation Commission. After his death, Roseann Esposito, his surviving spouse, was added as a plaintiff. For the sake of simplicity, we refer to Roseann Esposito as the plaintiff and Robert Esposito as the decedent.

[2] The plaintiff appealed from the decision of the Compensation Review Board to the Appellate Court; see General Statutes § 31-301b; and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[3] As a result of General Statutes § 31-275d (a) (1), the administrative adjudicators for the commission became known as "administrative law judges," rather than their former title of "workers' compensation commissioners." Because this appeal includes decisions rendered both before and after October 1, 2021, which was the effective date of § 31-275d (a) (1), consistent with recent workers' compensation appeals, we refer to the commission's administrative adjudicators by their title at the time of the applicable decision. See, e.g., *Ajdini* v. *Frank Lill & Son, Inc.*, 349 Conn. 1, 3 n.1, 4–5, 312 A.3d 579 (2024); *Clark* v. *Waterford, Cohanzie Fire Dept.*, 346 Conn. 711, 716 n.4, 295 A.3d 889 (2023).

lifetime. On appeal, the plaintiff claims, among other things, that the decedent, who had been employed as a police officer for the named defendant, the city of Stamford (city),[4] had reached maximum medical improvement prior to his death as a matter of law, insofar as he had been found to have a permanent incapacity qualifying him for benefits under § 31-307 (c). Guided by this court's recent decision in *Brennan* v. *Waterbury*, 331 Conn. 672, 697, 207 A.3d 1 (2019), we disagree with the plaintiff and, accordingly, affirm the decision of the board.

The record reveals the following relevant facts and procedural history. The decedent began working for the city's police department in 1976, at which time his physical examination indicated that his vision was 20/20 in both eyes. In 1982, in the course of his employment, the decedent fell and struck the back of his head on a concrete floor, losing consciousness. When he awoke, he experienced blurred vision in both eyes. James E. Pulkin, an ophthalmologist at Yale University, treated the decedent immediately for "a profound visual loss in both eyes," finding that "the best level of corrected vision in the right eye was 20/400 and finger counting at four inches in the left eye." (Internal quotation marks omitted.)

The decedent filed a claim for benefits with the commission. In 1984, at an informal hearing before the commission, the defendants agreed to provide total incapacity benefits to the decedent pursuant to General Statutes (Rev. to 1983) § 31-307 and, thereafter, began paying benefits of $531.03 per week. Subsequently, in 1985, the commissioner awarded the decedent total incapacity benefits pursuant to General Statutes (Rev. to 1985) § 31-307 "due to total and permanent loss of

---

[4] PMA Management Corporation of New England, the third-party administrator for the city, also is a defendant.

sight in both eyes.'' (Internal quotation marks omitted.) The decedent moved to Ohio in 1985 and began treatment with Bruce R. Jacobson, an ophthalmologist. Jacobson diagnosed the decedent with ''a macular hole (cystic lesion) of the left eye with a visual acuity of 20/200 (uncorrected) and a visual acuity of the right eye of 20/200 (uncorrected).'' One decade later, in 1995, Roland D. Carlson, an ophthalmologist, examined the decedent and reviewed medical reports provided by Jacobson, Abbas Sadeghian, a clinical psychologist, and Cyril Waynik, a psychiatrist. Carlson found that the decedent had ''a macular hole in his left eye and vision of 20/200,'' which is equivalent to ''one tenth or less of normal uncorrected vision.'' The decedent was then given a ''bioptic telescope,'' which corrected his vision in his right eye to an acuity level of 20/40. Carlson, however, additionally found that the decedent suffered from a ''hysterical component'' that contributed to his inability to see, which is a condition known as ''psychogenic blindness.'' Jacobson ''agree[d] that [the decedent's] vision may [have been] complicated by the contribution of this psychogenic overlay'' but opined that his ultimate ''visual disability [was] equal to [one] having a purely organic cause.''

The defendants filed a form 36[5] in April, 1998, contesting the decedent's continued entitlement to total incapacity benefits pursuant to § 31-307 (c). In June, 1998, the commissioner denied the defendants' form 36 and ordered the defendants to continue to pay benefits pursuant to § 31-307 (c) (1998 finding). In the 1998 find-

---

[5] ''A [f]orm 36 is a [statutorily required] notice to the [workers'] compensation commissioner and the [claimant] of the intention of the employer and its insurer to discontinue [or reduce] compensation payments. The filing of this notice and its approval by the commissioner are required by statute in order properly to discontinue [or reduce] payments.'' (Internal quotation marks omitted.) *Gardner* v. *Dept. of Mental Health & Addiction Services*, 223 Conn. App. 221, 223 n.2, 308 A.3d 550, cert. granted, 348 Conn. 954, 309 A.3d 304 (2024).

ing, the commissioner found that the decedent had been receiving total incapacity benefits since 1984 due to his "total and permanent loss of sight or the reduction to one tenth or less of normal vision in both eyes," satisfying the § 31-307 (c) standard. The defendants did not challenge the 1998 finding or that order. The defendants continued to make total incapacity benefit payments pursuant to § 31-307 (c), with the applicable cost of living adjustments pursuant to General Statutes § 31-307a, from April, 1982, until the decedent's death in November, 2020.

In July, 2021, the plaintiff was added as a party at formal proceedings before the commission; she claimed that she was the decedent's surviving spouse and sole presumptive dependent, and sought permanency benefits pursuant to § 31-308 (b). The plaintiff argued that, as the surviving spouse, she was entitled to permanency benefits pursuant to § 31-308 (b) following the decedent's death, even though those benefits had never been paid to the decedent and he had never requested them during his lifetime. The plaintiff argued that she was a presumptive dependent, as defined by General Statutes § 31-275 (19), and that the decedent's bilateral eye condition had become permanent no later than the date of the 1998 finding, and as early as 1984. Additionally, the plaintiff claimed that the decedent's right to permanency benefits pursuant to § 31-308 (b) vested once his condition became permanent, thus entitling the plaintiff, as his surviving spouse, to those vested permanency benefits.

Considering these claims, the administrative law judge concluded that the decedent's entitlement to permanency benefits under § 31-308 (b) had vested no later than the date of the 1998 finding and that the decedent had reached maximum medical improvement by June, 1998, entitling him to a permanency award of 235 weeks of benefits for each eye. However, the administrative

law judge also concluded that the defendants were entitled to a credit against any permanency award "for all indemnity benefits paid after the date of maximum medical improvement" because the amount of total incapacity benefits paid by the defendants was greater than the amount of permanency benefits owed to the decedent. Therefore, the administrative law judge denied and dismissed the plaintiff's claim for permanency benefits.[6]

The plaintiff appealed from the decision of the administrative law judge to the board. On appeal, the plaintiff claimed that the administrative law judge "erroneously applied the law" in concluding that the defendants were entitled to a credit against the unpaid permanency benefits. The board did not decide this claim, instead affirming the administrative law judge's decision on alternative grounds. Specifically, quoting from this court's decision in *Brennan* v. *Waterbury*, supra, 331 Conn. 697, the board concluded that, despite the decedent's "inchoate entitlement to 235 weeks of permanency benefits for each eye," the decedent nevertheless was not entitled to permanency benefits because the record lacked proof of a "concomitant assignment or award of a permanent partial disability rating, or 'an agreement between the parties sufficient to establish a binding meeting of the minds.' " Observing that the 1998 finding lacked any reference to a written or oral agreement for the payment of permanency benefits, the board concluded that the

---

[6] In objecting to the plaintiff's claim for permanency benefits, the defendants also contended that the date of injury rule governed the plaintiff's dependency rights and that the plaintiff's and decedent's divorce in 1992 broke the legal chain of marriage, thus terminating any right the plaintiff might have had, even though they had remarried each other in 2010 and remained married until the decedent's death in 2020. The administrative law judge did not decide the issue of whether the divorce affected the plaintiff's status as the presumptive dependent of the decedent because it was "not material to the outcome of this case, as there [were] no permanency benefits still owing."

finding of statutory total incapacity did not create "an automatic entitlement to [permanency benefits] by operation of law." The board further concluded that, even if the 1998 finding were construed as a finding of maximum medical improvement, the commencement date of the credit could not be the date that the finding was issued in June, 1998, because that calculation would depend on "the specific circumstances of the claim along with consideration of the prohibition against double recovery." Accordingly, the board affirmed the administrative law judge's decision dismissing and denying the plaintiff's claim for permanency benefits. This appeal followed.

On appeal, the plaintiff claims that the board incorrectly concluded that the decedent's entitlement to permanency benefits did not vest before his death because he had reached maximum medical improvement as of the date of the 1998 finding, entitling him to permanency benefits as a matter of law.[7] The plaintiff contends that the board incorrectly relied on the decedent's failure to request a permanency award during his lifetime and on the absence of an order for the payment of permanency benefits. Additionally, the plaintiff argues that a decedent need only have a permanent incapacity under § 31-307 (c) to satisfy § 31-308 (b), and that the fact that the decedent's disability spanned many years was enough to render his condition permanent. The defen-

---

[7] Addressing the other matters raised before the board and the administrative law judge, the plaintiff also claims that (1) the defendants are not entitled to a credit against the permanency benefits for the total incapacity benefits they paid because §§ 31-307 (c) and 31-308 (b) each compensate the claimant for distinct losses, meaning that the payment of both types of benefits was not an impermissible double recovery, and (2) she is a presumptive dependent entitled to the vested permanency benefits because, despite their earlier divorce, she was married to the decedent at the time of his injury and had remarried him prior to his death. See footnote 6 of this opinion. Given our conclusion that the decedent was not entitled to permanency benefits under § 31-308 (b), we need not address these additional claims.

dants contend in response that the decedent's entitlement to permanency benefits did not vest before his death because the record lacks evidence of the decedent's maximum medical improvement. The defendants argue that the 1998 finding did not satisfy the § 31-308 (b) standard because there was no medical report addressing maximum medical improvement and because the parties had never discussed a permanent partial disability rating during the decedent's lifetime. We agree with the defendants and conclude that the decedent's entitlement to permanency benefits under § 31-308 (b) did not vest before his death because the record does not establish that he had reached maximum medical improvement, even though he had been found to have a permanent injury under § 31-307 (c).

"The principles that govern our standard of review in workers' compensation appeals are well established. The conclusions drawn by [the commissioner] from the facts found must stand unless they result from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them. . . . [Moreover, it] is well established that [a]lthough not dispositive, we accord great weight to the construction given to the workers' compensation statutes by the commissioner and [the] board. . . . Cases that present pure questions of law, however, invoke a broader standard of review than is ordinarily involved in deciding whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally or in abuse of its discretion. . . . We have determined, therefore, that the traditional deference accorded to an agency's interpretation of a statutory term is unwarranted when the construction of a statute . . . has not previously been subjected to judicial scrutiny [or to] . . . a governmental agency's time-tested interpretation . . . ." (Internal quotation marks omitted.) *Cough-*

*lin* v. *Stamford Fire Dept.*, 334 Conn. 857, 862–63, 224 A.3d 1161 (2020).

"In addition, we are mindful of the proposition that all workers' compensation legislation, because of its remedial nature, should be broadly construed in favor of disabled employees." (Internal quotation marks omitted.) Id., 863. "It is axiomatic that we follow the plain meaning rule set forth in General Statutes § 1-2z in construing statutes . . . ." *Clark* v. *Waterford, Cohanzie Fire Dept.*, 346 Conn. 711, 725, 295 A.3d 889 (2023). Because the present case does not present a time-tested agency interpretation, and because no appellate court has considered whether a finding of a permanent injury under § 31-307 (c) entitles a claimant to § 31-308 (b) permanency benefits as a matter of law, our review is plenary.

By way of background, workers' compensation claimants may receive either "special" or "specific" benefits, depending on the extent and nature of their injuries. Special benefits, such as temporary, total incapacity benefits, "continue only as long as there is an impairment of wage earning power . . . ." *Brennan* v. *Waterbury*, supra, 331 Conn. 685. In contrast, specific benefits, like permanency benefits, are awarded "for a fixed period in relation to the degree of impairment of a body part." Id.

Section 31-307 provides for temporary, total incapacity benefits, which are considered special benefits. Id. Section 31-307 (a) provides in relevant part: "If any injury for which compensation is provided under the provisions of this chapter results in total incapacity to work, the injured employee shall be paid a weekly compensation equal to seventy-five per cent of the injured employee's average weekly earnings as of the date of the injury . . . ." Section 31-307 (c) enumerates a list of injuries that are considered to cause total incapacity, including "[t]otal and permanent loss of sight

of both eyes, or the reduction to one-tenth or less of normal vision . . . .'' General Statutes § 31-307 (c) (1). The statute is designed to compensate claimants for the loss of earning capacity, with compensation amounts dependent on the capacity to work. See *Gardner* v. *Dept. of Mental Health & Addiction Services*, 223 Conn. App. 221, 232, 308 A.3d 550, cert. granted, 348 Conn. 954, 309 A.3d 304 (2024).

In contrast, § 31-308 authorizes the payment of permanent partial disability benefits, or permanency benefits. Injured employees who qualify for permanency benefits receive ''a weekly compensation equal to seventy-five per cent of the difference between the wages currently earned by an employee in a position comparable to the position held by the injured employee before his injury . . . .'' General Statutes § 31-308 (a). Subsection (b) of § 31-308 lists injuries that qualify under the statute for permanency benefits and includes, for one eye, ''[c]omplete and permanent loss of sight in, or reduction of sight to one-tenth or less of normal vision . . . .'' The statute is intended to compensate injured employees ''for the loss, or loss of use, of a body part.'' *Marandino* v. *Prometheus Pharmacy*, 294 Conn. 564, 577, 986 A.2d 1023 (2010); see *Gardner* v. *Dept. of Mental Health & Addiction Services*, supra, 223 Conn. App. 236–37. Pursuant to § 31-308 (d), in the event of a claimant's death, such benefits may be paid to his surviving spouse or his presumptive dependent, as defined by § 31-275 (19). See *Churchville* v. *Bruce R. Daly Mechanical Contractor*, 299 Conn. 185, 191–92, 8 A.3d 507 (2010).

It is well settled that, pursuant to General Statutes § 31-295 (c), a claimant's entitlement to permanency benefits under § 31-308 (b) vests once the claimant has reached maximum medical improvement. See, e.g., *Brennan* v. *Waterbury*, supra, 331 Conn. 696; *Gardner* v. *Dept. of Mental Health & Addiction Services*, supra,

223 Conn. App. 237–38; see also *McCurdy* v. *State*, 227 Conn. 261, 268, 630 A.2d 64 (1993); *Osterlund* v. *State*, 129 Conn. 591, 598, 30 A.2d 393 (1943). The right to permanency benefits automatically vests once maximum medical improvement is reached, even if the claimant has not affirmatively requested those benefits. *Churchville* v. *Bruce R. Daly Mechanical Contractor*, supra, 299 Conn. 191. A finding of maximum medical improvement requires a determination of the specific date that a claimant has reached maximum medical improvement; that date is significant for two reasons. First, the date of maximum medical improvement is when "the *right* to permanent disability benefits . . . is established . . . ." (Emphasis in original.) *Brennan* v. *Waterbury*, supra, 695. Second, that date establishes the point at which "the *degree* of permanent impairment (loss of, or loss of use of a body part) can be assessed, which will determine the employer's payment obligations . . . ." (Emphasis in original.) Id., 696.

Although permanency benefits may be awarded posthumously, such an award requires the existence of a supporting record containing a finding of maximum medical improvement by permanent partial disability ratings or separate reports or medical evaluations expressly stating that the claimant has reached maximum medical improvement. See *Churchville* v. *Bruce R. Daly Mechanical Contractor*, supra, 299 Conn. 188–90 (record established that claimant underwent multiple medical evaluations to determine extent of his disability, and multiple physicians found that he had reached some percentage of maximum medical improvement); *McCurdy* v. *State*, supra, 227 Conn. 263–64 (claimant was assigned permanent partial disability rating of 70 percent, and separate report stated that he had reached maximum medical improvement prior to his death).

The "rule against double compensation prohibits [the] concurrent payment" of total incapacity benefits

under § 31-307 (c) and permanency benefits under § 31-308 (b) for "the same incident." *Paternostro* v. *Edward Coon Co.*, 217 Conn. 42, 49, 583 A.2d 1293 (1991). Rather, § 31-308 permanency benefits are paid consecutively to § 31-307 total incapacity benefits because both statutes compensate an employee for a different type of loss. See *Olmstead* v. *Lamphier*, 93 Conn. 20, 22–23, 104 A. 488 (1918); see also *Paternostro* v. *Edward Coon Co.*, supra, 47–48 (discussing how new language added to predecessor statute of § 31-308 (b) did not overrule this court's previous holding that total incapacity benefits and permanency benefits can be paid consecutively). Therefore, an award of § 31-307 total incapacity benefits does not discharge the employer's obligation to pay § 31-308 permanency benefits sometime in the future. *Cappellino* v. *Cheshire*, 226 Conn. 569, 578, 628 A.2d 595 (1993).

In determining whether a claimant has established maximum medical improvement for purposes of permanency benefits under § 31-308, we find instructive our recent decision in *Brennan* v. *Waterbury*, supra, 331 Conn. 672. In *Brennan*, the commissioner had agreed with the claim that the decedent, Thomas Brennan, had clearly reached maximum medical improvement during his lifetime and ordered the defendant city to pay the executor of Brennan's estate benefits for 80 percent permanent partial disability of Brennan's heart pursuant to the heart and hypertension statute, General Statutes § 7-433c, and § 31-308. See id., 679–80, 693–94. We concluded that permanent disability benefits can mature "only after the degree of permanency has been fixed by way of an award or an agreement between the parties sufficient to establish a binding meeting of the minds" and, accordingly, remanded the case to the commissioner for this finding. Id., 697; see id., 700. Remand to the commissioner for additional findings was required because we could not "state with certainty that the

unpaid portion of the 80 percent [permanency] benefits necessarily matured before [Brennan's] death,'' insofar as there was a lack of necessary findings on critical issues. Id., 694. First, the commissioner's award of benefits simply stated that Brennan had established a compensable condition under § 7-433c but did not state that maximum medical improvement had been reached or that there was a permanent partial disability rating; three medical experts gave assessments of Brennan's disability varying from 50 to 80 percent. See id., 676–77, 698. Second, there was no voluntary agreement that had been submitted to the commissioner for approval during the decedent's lifetime, and a draft agreement that had been presented was not signed by the defendant city. See id., 698. Third, there was no evidence of a meeting of the minds on the degree of permanency to be assigned. See id., 699. Therefore, we remanded the case to the commissioner to determine the amount of benefits due. Id., 700.

Guided by *Brennan*, we now consider whether the record in the present case establishes that the decedent achieved maximum medical improvement during his lifetime, thus entitling him to permanency benefits under § 31-308.[8] We conclude that the decedent did

---

[8] The dissent asserts that we misread *Brennan* because the "central issue in the present case involves when benefits under § 31-308 (b) *vest*, not when they *mature*," insofar as "benefits vest when the claimant's injury becomes permanent; they mature when they become payable. The issue of maturation does not relate to *when* the benefits become an entitlement, but *who has the right to receive the benefits* to which the claimant is entitled after death— the estate, or the dependents." (Emphasis in original.) Part II B of the dissenting opinion. We disagree with the dissent's reading of *Brennan* on this point. In *Brennan*, we observed that "this court occasionally has stated that the benefits did not 'accrue' because there had been no determination whether, or the date [on] which, the claimant reached maximum medical improvement," and stated: "We do not read these references to accrual to mean that [Brennan's] benefits would have matured if that date had been established irrespective of whether the degree of permanent disability had been established. Rather, *we construe such references as equivalent to vesting, in that the right to such benefits would be established when the date is fixed*. An unfortunate feature of our workers' compensation jurispru-

not reach maximum medical improvement during his lifetime because the record lacks the requisite finding to that effect, as contemplated by *Brennan*. See id., 697.

First, the record lacks a clear permanent partial disability rating, or an agreement to that effect between the decedent and the defendants that would furnish a basis for the requisite finding of maximum medical improvement. See id., 698–99. Although the decedent's physicians characterized his condition as "one tenth or less of normal uncorrected vision" when he was originally examined and treated between 1982 and 1995, there is no other indication that the physicians determined that that particular degree of vision loss constituted any percentage of maximum medical improvement. Nor was there an agreement between the parties establishing whether the decedent had reached any percentage of maximum medical improvement. The absence of either of these items from the record is particularly significant in light of the decedent's psychogenic blindness diagnosis, which suggests that there could well have been room for the improvement of his condition.

Relying on this court's decisions in *McCurdy* v. *State*, supra, 227 Conn. 261, and *Churchville* v. *Bruce R. Daly Mechanical Contractor*, supra, 299 Conn. 185, the plaintiff argues that the board improperly focused on the decedent's failure to seek permanency benefits during his lifetime and the lack of any predeath order or award of benefits. She contends that, under *McCurdy* and *Churchville*, the decedent had reached maximum medi-

dence is a lack of consistency in terminology." (Emphasis added.) *Brennan* v. *Waterbury*, supra, 331 Conn. 695 n.17. Regardless of the terminology in the workers' compensation lexicon, *Brennan* indicates that the key finding for establishing entitlement to § 31-308 (b) permanency benefits—which is lacking in this case—is the degree of permanency via establishing maximum medical improvement. See id., 695–96. Who is entitled to receive those benefits after the death of the original claimant, and at which point, is an issue that we simply do not reach given the lack of that threshold finding. See footnotes 6 and 7 of this opinion.

cal improvement and became entitled to permanency benefits during his lifetime as a matter of law, thus rendering unnecessary an order for the payment of permanency benefits. Although we agree with the plaintiff that this court's decisions in *McCurdy* and *Churchville* do not require a decedent to have affirmatively requested permanency benefits during his or her lifetime in order for the decedent's surviving spouse to receive the benefits posthumously, those cases are distinguishable from the present case. In the present case, the board's decision reflected that permanency, including the degree of disability, had not been established given the lack of a finding of maximum medical improvement or an agreement between the parties. In contrast, in both *McCurdy* and *Churchville*, there was no dispute as to whether the decedent had reached maximum medical improvement. See *Churchville* v. *Bruce R. Daly Mechanical Contractor*, supra, 189–90 (board had upheld commissioner's finding that decedent "suffered a 10 percent permanent partial disability to his right shoulder and a 32 percent permanent partial disability to his lumbar spine"); *McCurdy* v. *State*, supra, 266–67 (there was no dispute as to degree of disability and realization of maximum medical improvement when decedent was rated by physician as having 70 percent permanent partial disability). Thus, the factual records in both *McCurdy* and *Churchville* bore some consensus of a permanency rating or a finding by the commissioner that signified a meeting of the minds, consistent with the standard later articulated in *Brennan* v. *Waterbury*, supra, 331 Conn. 697.

The plaintiff, joined by the dissent, also contends that the 1998 finding, which was echoed by the administrative law judge in the decision at issue in this appeal, established that the decedent had reached maximum medical improvement, despite the lack of express language to that effect in the finding. See part II A and

footnote 9 of the dissenting opinion. We disagree. In the 1998 finding, the commissioner identified the issue to be "[t]he approval or denial of a form 36 filed and received on April 1, 1998, and alleging that [the decedent's] permanent total disability status is other than it was in 1984." The commissioner ultimately concluded that the decedent's condition continued to meet the § 31-307 (c) standard and ordered the defendants to continue making payments pursuant to that statute. In making the 1998 finding, the commissioner applied only the § 31-307 (c) standard and did not consider maximum medical improvement for purposes of § 31-308 (b), despite characterizing the decedent's condition as the "total and permanent loss of sight or the reduction to one tenth or less of normal vision in both eyes." Accordingly, the commissioner denied the defendants' form 36, which challenged the decedent's entitlement to total incapacity benefits under § 31-307 (c). The record lacked then, as it lacks now, any medical confirmation of a permanency rating, any consideration of how the hysterical component affected or would have affected that rating, or any form of agreement between the parties regarding the extent of the disability. Accordingly, that the record established an entitlement to § 31-307 (c) benefits does not mean that it established the maximum medical improvement required for the award of benefits pursuant to § 31-308 (b).[9] See *Cappellino* v.

[9] The dissent characterizes our conclusion as the product of failing to give appropriate appellate deference, as the factual findings of an administrative adjudicator, to the administrative law judge's conclusion that the decedent had reached maximum medical improvement and that his right to permanency benefits vested by June 9, 1998—the date of the 1998 finding about the permanency of the decedent's vision loss. See part II A of the dissenting opinion; see, e.g., *Coughlin* v. *Stamford Fire Dept.*, supra, 334 Conn. 862–63; *Birnie* v. *Electric Boat Corp.*, 288 Conn. 392, 404, 953 A.2d 28 (2008). We respectfully disagree with the dissent's characterization of our analysis as failing to afford proper appellate deference to the administrative law judge's 2022 decision. Unlike the dissent, we do not read the administrative law judge's 2022 decision as finding new facts but, instead, as giving legal effect to the 1998 finding concerning the plaintiff's claim for permanency benefits under § 31-308 (b). Put differently, rather than considering the simpler appel-

*Cheshire*, supra, 226 Conn. 578 (observing that "[the] two types of benefits [under §§ 31-307 and 31-308] compensate an employee for different types of loss" in concluding that "the payment of temporary total [incapacity] benefits [does not] automatically [discharge the employer's] obligation under [a] voluntary agreement to pay [permanency] benefits").

The plaintiff argues, and the dissent also asserts, that, because both §§ 31-307 (c) and 31-308 (b) use identical language regarding an eye disability, qualifying for one benefit entitles a claimant to qualify for the other as a matter of law. See part II A of the dissenting opinion. The plaintiff also contends that the lack of "maximum medical improvement" language in § 31-308 (b) means that having a permanent incapacity under § 31-307 (c) is sufficient to comply with § 31-308 (b). However, both propositions are inconsistent with our long established case law. First, there is no case law suggesting that qualification for benefits under § 31-307 (c) similarly qualifies a claimant for permanency benefits under § 31-308 (b). Instead, *Brennan* states that permanency benefits mature under § 31-308 only *after* the degree of permanency is fixed by either an award or an agreement between the parties, which is a standard that does not

late question of whether the 1998 finding is grounded in the factual record—a proposition with which we have no quarrel with the dissent—the actual question in this appeal is about the effect of the 1998 finding concerning the § 31-308 (b) claim. It distills to a question of preclusion, given the difference in the applicable legal standards. See *Birnie* v. *Electric Boat Corp.*, supra, 413. Because the commissioner was not asked to, and did not, consider what has become the critical question of maximum medical improvement in making the 1998 finding, our decision not to give it preclusive effect on that issue simply does not amount to failing to give the administrative law judge's 2022 decision the appropriate level of appellate deference. To the extent that this issue may distill to a simple question of appellate deference to the fact finder—as the dissent sees it—we observe that the lack of clarity in the plaintiff's briefing on this point, compounded by the lack of a reply brief, contributes to our understanding of the issue as a question of law.

apply to § 31-307 benefits. See *Brennan* v. *Waterbury*, supra, 331 Conn. 697. Therefore, there is no qualification as a matter of law, despite some general similarity between the two statutes and particularly the injuries that they cover. See *Vitti* v. *Milford*, 336 Conn. 654, 666, 249 A.3d 726 (2020) ("a holding that § 31-308 (b) is triggered automatically upon the removal of a native organ, without regard to the ameliorative effects of a transplant, would be inconsistent with nearly one century of case law governing the concept of maximum medical improvement"). Second, *Brennan* did not concern a § 31-307 claim and, instead, considered the proof necessary to establish maximum medical improvement for § 31-308 purposes, even though the statute itself does not expressly require proof of maximum medical improvement to establish an entitlement to benefits. See *Brennan* v. *Waterbury*, supra, 679, 696–97. *Brennan*'s requirement of a meeting of the minds as to a clear permanency rating via an award or an agreement between the parties ensures that (1) the claimant is receiving the full and correct amount of benefits that he or she is entitled to, and (2) the employer is put on notice of any potential change in benefits. See id., 697.

Finally, the plaintiff argues that, because the decedent suffered from a compensable injury that did not change in degree for sixteen years, his injury necessarily constitutes a complete and permanent disability for purposes of § 31-308. We disagree. That there was no further updating of the decedent's medical record with respect to his eye injuries between 1995 and his death in 2020 does not mean as a matter of law that his condition remained unchanged since 1984. This is particularly important given the 1986 diagnosis of psychogenic blindness, which could well have affected a permanency rating. Although there is evidence in the record that might well ultimately support a finding of maximum medical improvement, we do not agree with

the plaintiff and the dissent that the 1998 finding, as viewed by the administrative law judge, conclusively established the maximum medical improvement required for an award of permanency benefits under § 31-308 (b). See part II A of the dissenting opinion.

Accordingly, we conclude that a finding of total incapacity pursuant to § 31-307 (c) does not create an entitlement to permanency benefits under § 31-308 (b) as a matter of law, in the absence of a permanency finding or an agreement sufficient for a binding meeting of the minds within the meaning of *Brennan* v. *Waterbury*, supra, 331 Conn. 697. Because the record does not establish that the decedent had reached maximum medical improvement, thus entitling him to permanency benefits pursuant to § 31-308, we need not reach the plaintiff's remaining claims, or the alternative grounds on which the board relied in affirming the decision of the administrative law judge. See footnotes 6 and 7 of this opinion.

The decision of the Compensation Review Board is affirmed.

In this opinion D'AURIA, MULLINS and DANNEHY, Js., concurred.